**Carol Thomas TAYLOR, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 52860.

Court of Criminal Appeals of Texas.

March 23, 1977.

Rehearing Denied April 13, 1977.

Carl E. Roberts, Paul F. Carnes, Dallas, for appellant.

Henry Wade, Dist. Atty., William M. Lamb, William L. Hubbard, Gerald A. Banks and Jim D. Burnham, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

OPINION

DALLY, Commissioner.

This is an appeal from a conviction for the offense of aggravated promotion of prostitution; the punishment is imprisonment for 4 years and a fine of $4,000.

The appellant urges that the evidence is insufficient to support his conviction because:

"A. The evidence is insufficient to show that the Roman Holiday Massage Parlor was a prostitution enterprise as alleged in the indictment.

"B. The evidence is insufficient to prove the knowledge of appellant in connection with the alleged offenses.

"C. The evidence is insufficient to prove that N_____ E_____ B_____ and P_____ A_____ were prostitutes as alleged in the indictment."

V.T.C.A. Penal Code, Section 43.04, provides that a person commits an offense if he knowingly owns, invests in, finances, controls, supervises, or manages a prostitution enterprise that uses two or more prostitutes. The indictment alleges that the appellant did knowingly own, invest in, finance, control, supervise, and manage a prostitution enterprise that then and there used two or more prostitutes, to-wit: N_____ B_____ and P_____ A_____.

The term "prostitution enterprise" is not defined in the new Penal Code. V.T.C.A. Penal Code, Sections 43.01 and 43.02(a)(1) defines "prostitution" as offering to, agreeing to, or engaging in sexual conduct in return for a fee payable to the actor. Webster's Third New International Dictionary defines "enterprise" as a plan or design for a venture or undertaking. Combining these definitions, a "prostitution enterprise" as used in V.T.C.A. Penal Code, Section 43.04, means a plan or design for a venture or undertaking in which two or more persons offer to, agree to, or engage in sexual conduct in return for a fee payable to them.

The State's case depends primarily upon the testimony of K_____ K_____, who was a masseuse at the Roman Holiday

Massage Parlor. She admitted that she had engaged in acts of prostitution there, and she knew that N_____ B_____ and P_____ A_____ had also engaged in acts of prostitution there. V.T.C.A. Penal Code, Section 43.06(d), provides that the uncorroborated testimony of a party to the offense is sufficient to prove the offense under the provisions of V.T.C.A. Penal Code, Section 43.04.

The appellant concedes that he owned and operated the Roman Holiday Massage Parlor, but he urges that the proof does not show that he knew his masseuses engaged in acts of prostitution there, and that the proof did not show that N_____ B_____ and P_____ A_____ were prostitutes. The massage rooms were equipped with a massage table, and there were king sized water beds in two of them. K_____ K_____ said she sometimes wore a long nightgown when she was working; N_____ B_____ wore a "Shirley Temple" nightgown, and P_____ A_____ wore a long nightgown when they were working.

Customers who patronized the massage parlor were given a "menu" on which there was a list of the different types of "massages" available. K_____ K_____ explained the meaning of the terms used on the "menu." The "Grandee" was priced at $20.00; the masseuse would sit around nude talking with the customer. The "Beauty and Bubbles" was priced at $40.00; the masseuse would give the customer a light massage and a "local." K_____ K_____ explained that the term "local" meant masturbation. The "Cleopatra With a French Connection" was priced at $60.00; the masseuse would perform an act of oral sex on the customer. Further descriptive words on the menu said that the "Cleopatra With French Connection" was the real French thing on a king sized water bed, and also "you may be running out of love, but included in the Cleopatra French Connection, there is lots of loving." The Roman Holiday Special No. One, priced at $50.00, included sexual intercourse. The Roman Holiday Special No. Five, priced at $100.00, included both sexual intercourse and oral sex.

K_____ K_____ said that she performed, while working at the Roman Holiday Massage Parlor, acts of masturbation, oral sex, and sexual intercourse. She placed her fees for these acts in a box, and at the end of the day she received half of the proceeds with the balance going to the appellant.

When K_____ K_____ first started to work at the massage parlor P_____ A_____, using the appellant's brother as a model, gave a demonstration showing how "to give oral sex without having any problems with it." The appellant was present and heard the conversation and P_____ A_____'s instruction prior to the demonstration, but he was not present when P_____ A_____ actually performed the act upon the appellant's brother.

K_____ K_____ testified that once when P_____ A_____ had a customer for the "Cleopatra Special," for which she had received $50.00, she came out of the room to get some mouth wash in the presence of the appellant and Grady Young, who was a co-defendant and the appellant's manager at the Roman Holiday Massage Parlor. Young commented: "Well, it must have been pretty bad. Uh." P_____ A_____ stuck her tongue out.

K_____ K_____ saw N_____ B_____ having sexual intercourse with a male customer on a water bed in the massage parlor.

K_____ K_____ testified that the masseuses, including N_____ B_____ and P_____ A_____, talked about the acts of prostitution which were performed at the Roman Holiday Massage Parlor and sometimes this was in the presence of appellant.

K_____ K_____ testified that while working at the Roman Holiday Massage Parlor she made between $1,000 and $1,500 a week. When she was employed in San Antonio and other places in "straight" massage parlors she earned from $100 to $200 per week. In the "straight" massage parlors she did not engage in acts of prostitution. K_____ K_____ said there were six

girls working at the Roman Holiday Massage Parlor and that they all made about the same amount of money as she did.

We conclude that the evidence is amply sufficient to support each element of the offense and the jury's verdict.

The judgment is affirmed.

Opinion approved by the Court.